MURDOCK, Judge.
K.R.B. (“the wife”) and D.J.B. (“the husband”) were married on November 6,1989. The wife was pregnant when the parties married; she gave birth to a child on March 17, 1990. The parties separated in 1991.
On February 7,1992, the husband filed a petition for divorce in the St. Clair Circuit Court; the petition stated, in pertinent part, that “[tjhere were no children born of this marriage. [The wife] was, however, pregnant with the child of another man when plaintiff married her. A child was born to [the wife] after the marriage of [the] parties, but said child is not the child of the [husband] herein.” On February 11, 1992, the wife filed a petition for support against the husband in the St. Clair District Court. In April 1992, the husband successfully moved the circuit court to consolidate the divorce action and the support action.
On May 12, 1992, the parties filed with the court an agreement they had executed in contemplation of divorce that stated, among other things, that the minor child born of the marriage was not the husband’s child. Thereafter, on July 10, 1992, the trial court entered a divorce judgment. With regard to the issue of the paternity of the minor child, the judgment stated, in pertinent part:
“THREE: The matter of the paternity of [the minor child] is hereby reserved for further order of this Court.
[[Image here]]
“EIGHT: Pending further order of this Court regarding the paternity of [the minor child], the [husband] shall pay child support to [the wife] for the support and maintenance of the said minor child ... according to the Child Support Guidelines as set forth in Rule *447 32 of the Alabama Rules of Judicial Administration .... ”
The record reveals that no further action was taken in this case until some eight and one-half years later, when the husband, on January 22, 2001, filed a pleading entitled a “Petition to Modify,”[1] requesting the trial court to “determine the true parentage of the minor child and [to] terminate [the] child support obligations of [the husband].” On March 7, 2001, the wife filed both a motion to dismiss the husband’s petition and an answer to that petition. The motion asserted that the husband had been adjudicated the father of the minor child and that the husband’s petition failed to state a claim for which relief could be granted. The answer generally denied the allegations of the husband’s petition and also asserted that the petition failed to state a claim upon which relief could be granted. Neither the March 7, 2001, motion, nor the March 7, 2001, answer filed by the wife asserted any affirmative defenses.
With her answer, however, the wife did file counterclaims seeking an increase in child support and a rule nisi. As to the rule nisi request, the wife alleged that the husband had failed and refused to pay “all child support as required,” to maintain medical insurance on behalf of the minor child, and to contribute to the payment of medical expenses incurred on behalf of the minor child that were not covered by insurance. We note that in a subsequent filing in the trial court asking the court to reconsider the order from which the husband now appeals, the husband “repre-sentfed] unto the Court that he has had no contact with the [wife] from the time of the divorce until the beginning of the current year, and that he has only filed his Petition to Modify after he became aware of the [wife’s] whereabouts. [The husband] would further aver that he has had no contact with the [minor child] in said time.”
A hearing was conducted on May 18, 2001, on the wife’s motion to dismiss. The record contains no transcript of that hearing and there is no indication in the record that the trial court received any evidence from the wife in support of her motion to dismiss.
No ruling was made on the wife’s motion until August 2001. In an order dated August 15, 2001, the trial court stated:
“The [wife] has filed a Motion to Dismiss the petition on grounds of laches, waiver and estoppel, and the statute of limitations. The Court is of the opinion that the Motion to Dismiss the petition to modify is well taken and it is hereby dismissed.”
The trial court’s order dated August 15, 2001, bears a stamp indicating that it was “filed” with the St. Clair Circuit Court clerk on August 22, 2001. The record also contains a document titled “Amendment to Answer Adding Affirmative Defenses” in which the wife asserts the affirmative defenses of laches, waiver, estoppel, and statute of limitations. This amendment is also stamped as having been “filed” with the circuit clerk on August 22, 2001.[2]
*448 On September 14, 2001, the husband filed a motion, asking the trial court to reconsider its dismissal of his petition seeking a paternity adjudication and to enter an order requiring the parties and the minor child to submit to genetic testing pursuant to Ala.Code 1975, § 26-17-12. The trial court subsequently entered an order setting both the wife’s counterclaim and the husband’s motion seeking reconsideration for a hearing on November 19, 2001.
On November 19, 2001, the trial court entered an order on the case action summary sheet denying the husband’s motion seeking reconsideration of the August 2001 order. However, there is no indication in the record that the trial court ever disposed of the wife’s counterclaim.
The husband attempts to appeal from the trial court’s August 2001 order dismissing his motion seeking a paternity determination. However, after reviewing the record, we conclude that there is not a final judgment from which the husband can appeal. The trial court never ruled upon the counterclaim filed by the wife on March 7, 2001. Even if it had, the 1992 divorce judgment reserved the matter of the paternity of the minor child pending further order of the court, and we can find nothing in the record indicating that a paternity adjudication was made at any time after the trial court reserved the issue in the divorce judgment.
“A ‘final judgment is a “terminal decision which demonstrates there has been a complete adjudication of all matters in controversy between the litigants.” ’ ” Horton v. Horton, 822 So.2d 431, 433 (Ala.Civ.App.2001) (quoting Dees v. State, 563 So.2d 1059, 1061 (Ala.Civ.App.1990)). Although dismissal of an appeal is appropriate when the order appealed from is not a final judgment, see Young v. Sandlin, 703 So.2d 1005 (Ala.Civ.App.1997), we elect in this case to treat the husband’s filing in this court as a petition for a writ of mandamus, seeking relief from the trial court’s August 2001 order and the trial court’s denial of the husband’s motion requesting genetic testing. See Roark v. Bell, 716 So.2d 1245 (Ala.Civ.App.1998); Ex parte Gamble, 709 So.2d 67 (Ala.Civ.App. 1998); Ex parte Norwood, 615 So.2d 1210 (Ala.Civ.App.1992).
“A writ of mandamus is an extraordinary remedy ... that should be granted only if the trial court clearly abused its discretion by acting in an arbitrary or capricious manner.” Ex parte Edwards, 727 So.2d 792, 794 (Ala.1998). The petitioner must demonstrate:
“ ‘(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ ”
Ex parte Edwards, 727 So.2d at 794 (quoting Ex parte Adams, 514 So.2d 845, 850 (Ala.1987)).
The father argues that he had a right to a determination as to whether he is or is not the father of the child. He also argues that the trial court could not properly address the mother’s claim for child support without first addressing the issue of paternity. We agree with both contentions. As *449 this court stated in Floyd v. Floyd, 701 So.2d 1151, 1153 (Ala.Civ.App.1997):
“[B]ecause the trial court possessed equitable jurisdiction to decide the issue of paternity, it had a prima facie duty to do so; it is the general rule that a court of equity, vested with jurisdiction in a particular case, will proceed to resolve all issues placed before it and to ‘resolve all equities between the parties.’ Creel v. Creel, 342 So.2d 793, 794 (Ala.Civ.App.1977); cf. Ex parte Handley, 460 So.2d 167, 169 (Ala.1984) (‘Equity delights to do justice, and not by halves.’).”
The father also argues that he is entitled to genetic testing with respect to the issue whether he is the father of the child. In this, too, we agree with the father. Section 26-17-12(a), Ala.Code 1975, provides that “[u]pon application of the defendant in a paternity proceeding or any other party to the action, the court shall order the mother, child, and defendant to submit to genetic tests to assist the court in determining paternity of the child.” See also State ex rel. Goodno v. Cobb, 567 So.2d 376 (Ala.Civ.App.1990) (applying the predecessor statute to § 26-17-12).
The petition for a writ of mandamus is granted. The trial court is directed to require the parties to submit to genetic testing as described herein, to conduct an evidentiary hearing on the issue of paternity, and, based thereon, to enter a judgment addressing the issue of paternity.
PETITION GRANTED; WRIT ISSUED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
THOMPSON, J., concurs in the result.

. In his subsequent motion to the trial court for reconsideration of the order from which the husband now attempts to appeal, the husband conceded that this "petition to modify'' may not have been properly styled.

. The certificate of service at the end of this amendment, however, recites a service date of May 18, 2001. The amendment is not referenced in the court’s case action summary sheet.
We also note that in the record immediately following the trial court’s August 2001 order is a document entitled "Argument in Support of Defendant’s Motion to Dismiss.” This document argues, among other things, that the *448 husband’s 2001 petition should be dismissed on the grounds of laches, waiver, estoppel, and statute of limitations. There is no filing date stamped on this document and no other indication in the record that it ever was filed with the court (including no reference to this document on the court's case action summary sheet). The certificate of service at the end of this document recites a May 18, 2001, service date.