THOMPSON, Presiding Judge.
T.J. petitions this court for a writ of mandamus directing the Montgomery Juvenile Court (“the juvenile court”) to recognize and adjudicate him as the presumed father of S.W. (“the child”) and to vacate its order requiring genetic testing to establish the child’s paternity.
According to the briefs and materials of the parties and the brief of the guardian ad litem of the child’s siblings filed in this court in support of and in opposition to the petition for a writ of mandamus, on September 3, 2009, R.W., the child’s maternal grandmother (“the maternal grandmother”), filed a petition in the juvenile court against T.J. and C.W., the child’s mother (“the mother”), seeking custody of three of her grandchildren, including the child. The maternal grandmother’s petition is not included in the materials submitted with this petition for the writ of mandamus.[1] However, according to the briefs submitted to this court in support of and in opposition to T.J.’s petition for a writ of mandamus, the maternal grandmother referred to T.J. as the child’s father in her custody petition.
On October 30, 2009, T.J. filed a petition in the juvenile court seeking custody of the child. T.J.’s custody petition is not included in the materials before this court. However, according to the parties’ briefs to this court relating to T.J.’s petition for a writ of mandamus, in T.J.’s custody petition, he claims that he is the child’s father *449 and that the child has lived with him since the child’s birth.
On November 13, 2009, the mother filed a petition for custody of the child. According to the briefs submitted to this court, the mother named J.H. as the father of the child. On January 22, 2010, the mother filed a motion requesting genetic testing of T.J. and J.H. to establish paternity of the child. T.J. apparently objected to the mother’s motion on the ground that he had “receivefd] the child into his home and openly [held] out the child as his natural child or otherwise openly [held] out the child as his natural child” so as to give rise to a presumption of paternity pursuant to § 26-17-204(a)(5), Ala.Code 1975. None of the documents mentioned are contained in the materials submitted to this court.
On December 3, 2010, the juvenile court held a six-hour hearing on the issue of T.J.’s paternity of the child. On December 17, 2010, the juvenile court entered an order granting the mother’s motion for genetic testing. On December 29, 2010, T.J. filed his petition for a writ of mandamus directing the juvenile court to recognize and adjudicate him as the presumed father of the child and to vacate the order requiring genetic testing. This court called for an answer and briefs from the other parties, and the parties have complied with that request.
In their briefs, each of the parties argues that the facts presented at the December 3, 2010, hearing support his or her respective position regarding whether T.J. is the presumptive father of the child. It is apparent from the parties’ briefs that material facts are in dispute. For example, T.J. asserts that the child has always lived with him. In her brief, the mother claims that there have been times when the child has lived with her and not with T.J. T.J. asserts that paperwork the maternal grandmother completed for the child at the child’s Head Start school indicated that he was the child’s father. The brief of the guardian ad litem for the child’s siblings, who argues against the issuance of the writ, states that the Head Start paperwork indicates that T.J. is the child’s “godfather” and that it identified J.H. as the child’s father. The guardian ad litem also stated that the mother’s address, and not T.J.’s, was listed as the child’s address on the Head Start paperwork. The parties also dispute the substance of the testimony of two of T.J.’s friends. In his brief, T.J. states that the friends said that T.J. had held the child out as his natural child. However, in the mother’s brief, she states that one of those friends testified that he had heard that T.J. was not the child’s biological father and that he had wondered why the child’s last name was different than T.J.’s and the mother’s last names.
In addition to the parties’ briefs presented to this court, the juvenile court submitted a letter brief stating that clear and convincing evidence was presented at the hearing that rebutted any presumption of paternity that T.J. might have had. As the juvenile court made clear in both its order and its letter brief to this court, the evidence is undisputed that T.J. was incarcerated at the time of the child’s conception. According to the juvenile court, evidence indicated that, by the time T.J. was released from incarceration, the mother was already five months pregnant with the child. The mother and T.J. have never married, and the mother has publicly identified another man as the child’s father.
In its order, the juvenile court recognized that T.J. and the child had developed a parent-child type of relationship and that T.J. provided financial and emotional support to the child. However, the juvenile court also found that it was “unlikely” that T.J. believed he was the natural father of *450 the child. After weighing the evidence, the juvenile court concluded that T.J. cannot be the child’s presumed father. In the order, the juvenile court stated that “there was no presumed father in this matter” and that, therefore, an order for genetic testing was appropriate. This conclusion is not inconsistent with the finding that T.J. had developed a loving and supportive relationship with the child.
As grounds for his petition for a writ of mandamus, T.J. contends that the juvenile court erred in failing to adjudicate him as the presumed father. He argues that, because he is the presumed father, no one can legally challenge his status as the child’s father. Therefore, T.J. says, the juvenile court improperly ordered genetic testing to establish paternity of the child.
A writ of mandamus is an extraordinary remedy available only when the petitioner demonstrates: “ ‘(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.’” Ex parte Nall, 879 So.2d 541, 543 (Ala.2003) (quoting Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001)). A petition for a writ of mandamus is the proper vehicle for seeking review of an interlocutory order. Ex parte A.M.P., 997 So.2d 1008, 1014 (Ala.2008). However, “[a] writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal.” Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala.1998) (citing Ex parte Drill Parts & Serv. Co., 590 So.2d 252 (Ala.1991)).
TJ.’s argument appears to be that no one can challenge his assertion that, pursuant to § 26-17-204(a)(5), Ala.Code 1975, he is the child’s father. The Alabama Uniform Parentage Act (“the AUPA”), codified at § 26-17-101 et seq., Ala.Code 1975, sets forth the statutory criteria for determining the paternity of a child. In pertinent part, § 26-17-204(a)(5) states:
“A man is presumed to be the father of a child if:
“(5) while the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental relationship with the child by providing emotional and financial support for the child.”
Section 27-17-204(b) provides:
“A presumption of paternity established under this section may be rebutted only by an adjudication under Article 6 [§ 26-17-601 through § 26-17-638], In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control. The presumption of paternity is rebutted by a court decree establishing paternity of the child by another man.”
(Emphasis added.)
The purpose of the December 3, 2010, hearing was to determine whether T.J. was, in fact, the presumed father of the child. In ordering genetic testing to be conducted to determine paternity, the juvenile court stated that, based upon the evidence presented at that hearing, it was “unable to find that [T.J. was] the presumed father.”
As previously mentioned, § 26-17-204(a)(5) provides that a man is the presumed father of the child when “he receives the child into his home and openly *451 holds out the child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental relationship with the child by providing emotional and financial support for the child.” (Emphasis added.) It is not enough for a man to develop a loving, nurturing, parent-child type of relationship with a child to be the legally presumed father of a child.
In this case, because we do not have a record of the proceedings before the juvenile court, we simply do not have before us the means to know whether T.J. presented sufficient evidence from which to determine that he held the child out to the public as his natural child as described in § 26-17-204(a)(5); we also do not know to what extent such evidence was disputed. However, based on the materials submitted to us in support of and in opposition to the petition for a writ of mandamus, we do know that undisputed evidence demonstrates that the child did not share T.J.’s last name and that the child’s mother has claimed that a man other than T.J. is the child’s natural father.
It is axiomatic that such conflicts in the evidence are for the trial court to resolve. Baker v. Townsend, 484 So.2d 1097, 1098 (Ala.Civ.App.1986). Without a transcript of the six-hour hearing, we cannot conclude that there was sufficient evidence from which to hold that T.J. held himself out to the public as the child’s natural father. If we were to grant the petition and issue the writ in this case, directing the juvenile court to recognize and adjudicate T.J. as the child’s presumed father, we would be usurping the juvenile court’s authority, without the benefit of a transcript of the hearing.
Because the evidence as set forth in the materials provided to this court tends to show that the mother was five months pregnant with the child before T.J. was released from incarceration and she began dating him, it must be recognized that T.J. cannot be the child’s biological father. Therefore, we do not believe that “undue injury” will arise from the juvenile court’s order granting genetic testing in an effort to determine paternity of the child. Because it has never been established that T.J. is the presumed father, he has failed to demonstrate that he has a clear legal right to a writ directing the juvenile court to vacate the order granting genetic testing to establish paternity. Thus, the proper method for T.J. to contest the juvenile court’s ruling that he is not the child’s presumed father is by an appeal.
For the reasons set forth above, T.J.’s petition for a writ of mandamus is due to be denied.
PETITION DENIED.
PITTMAN and MOORE, JJ., concur.
THOMAS, J., dissents, with writing, which BRYAN, J., joins.

. We note that when an appellate court "considers a petition for a writ of mandamus, the only materials before it are the petition and the answer and any attachments to those documents. There is no traditional 'record' submitted" as there is in an appeal. Ex parte Guaranty Pest Control, Inc., 21 So.3d 1222, 1228 (Ala.2009). Rule 21(a)(1)(B) and (E), Ala. R.App. P., provides that the petitioner is to provide this court with a "statement of the facts necessary to an understanding of the issues presented by the petition,” as well as “[c]opies of any order or opinion or parts of the record that would be essential to an understanding of the matters set forth in the petition.” The respondent is also given an "opportunity to supplement the ‘record’ by attaching exhibits of its own...." Ex parte Fontaine Trailer Co., 854 So.2d 71, 74 (Ala.2003); see also Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 232 n. 2 (Ala.2004).