MURDOCK, Justice
(dissenting).
My understanding of the reasoning employed by the trial court is different than the understanding contemplated by the analysis in the main opinion. Specifically, the analysis offered in the main opinion appears to contemplate that the trial judge entertained evidence of who the biological father might be because she thought it necessary for a man to be a biological father in order to maintain his position as a “presumed father” under § 26-17-204, Ala.Code 1975. I do not read her order in this manner. Instead, I read her order— and her explanatory brief to this Court — to indicate that she was operating under the incorrect impression that she was dealing with a true evidentiary presumption as to who the biological father might be and that evidence of another man being the biological father therefore could and did rebut this presumption. I write in Part B below, to explain the trial court’s reason *750 ing, as I understand it, and in turn why I think that reasoning was wrong.
At the end of Part B, I also note my disagreement with the characterization in the main opinion of the holding of Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989).
I begin this writing in Part A with the discussion of the procedural issue, which was the focus of the majority opinion of the Court of Civil Appeals. Ex parte T.J., 74 So.3d 447 (Ala.Civ.App.2011).
Finally, I believe that the order of the trial court ordering genetic testing is due to be formally vacated at this juncture. As explained in Part C below, because the main opinion does not order the vacatur of that order, my vote, as reflected above, is registered as a “dissent.”

A. The Procedural Issue

A majority of the Court of Civil Appeals in this case used as a reason for denying T.J.’s requested relief a concern about a factual issue not addressed by the trial court: whether T.J. held himself out as the “natural” father of the child. Because of its focus upon this factual issue, that majority in turn considered itself unable to provide relief to T.J. without the benefit of a transcript of the evidentiary hearing held by the trial court:
“In this case, because we do not have a record of the proceedings before the juvenile court, we simply do not have before us the means to know whether T.J. presented sufficient evidence from which to determine that he held the child out to the public as his natural child as described in § 26-17-204(a)(5); we also do not know to what extent such evidence was disputed.”
Ex parte T.J., 74 So.3d at 451 (emphasis added).
If the trial court had expressly made a factual finding that T.J. had not held himself out as the “natural” father of the child, or if we could impute this finding to the trial court, the Court of Civil Appeals’ concern with the lack of a transcript would be appropriate. The trial court, however, did not expressly decide this factual issue or even address it in its order. For the reason explained below, neither can we (or the Court of Civil Appeals) impute to the trial court any finding as to this issue.
The one portion of the “record” the petitioner has provided us in this mandamus proceeding is the trial court’s order itself. Based on this order, we know exactly on what ground the trial court entered its order — and it was not on the ground discussed by the majority of the Court of Civil Appeals. Instead, the trial court simply found that the “presumption” that T.J. was the father of the child had been “rebutted” by evidence that he was not the genetic/biological father of the child. Specifically, the trial court expressly found and reasoned as follows:
“Undisputed testimony revealed that [T.J.] had been incarcerated during the period of July through November in 2004. Both the mother and [someone else’s] testimony indicated that the parties were not cohabiting and did not engage in sexual intercourse at the probable time of conception.
“It is clear from the testimony of the witnesses and the admissions by the mother that [T.J.] has been in a generous and loving role towards the minor child, and that he has provided for her emotionally and financially since her birth. Furthermore, it is clear from the testimony that the mother has allowed the relationship to grow and that the child calls [T.J.] ‘daddy.’ The evidence clearly shows that [T.J.], despite knowing that the child is not or may not be his genetic child, affirmatively accepted a caregiver role as the child’s father and *751 that the child, the mother, and the maternal grandmother have relied on that acceptance.
“It is undisputed that [T.J.] has established a parent-child relationship with [the child]. Notwithstanding the same, it is unlikely that he believed this child to be his ‘natural’ child when he was incarcerated at the likely time of conception. [T.J.J does not dispute that he was incarcerated from July through November in 200k and further that he did not have a physical relationship with the mother at the likely time of conception. This court can not ignore this fact. Further, the mother testified that she was already 5 months’ pregnant when [T.J.] was released from incarceration in November 200k. This court also considered the Headstart application, which pre-dates this proceeding, wherein the mother identified another man as the father of [the child] and identified [T. J.] as the Godfather.

“Based on the foregoing, this court is unable to find that [T.J.] is the presumed father.”

(Emphasis added.)
In addition to the trial court’s order itself, we have the trial judge’s letter brief to this Court, which further confirms that the basis for her holding was her misunderstanding that she was obligated to consider evidence that might tend to show that T.J. was not the biological father of the child. In her letter brief to this Court, the judge explains her own order, providing only the following basis for it:
“The undersigned acknowledges [T.J.’s] love and affection for the minor child at issue in this matter and his financial and emotional support of the child. The undersigned recognizes that [T.J.’s] actions could give rise to a presumption of paternity of the child. However, in making the determination whether to adjudicate [T.J.] as the presumed father of the child, the undersigned also weighed evidence which showed that [T.J.] was incarcerated at the likely time of conception and the testimony of the Mother that another man is the biological father of the child.
“The undersigned determined that clear and convincing evidence was presented which rebutted any presumption of paternity on the part of [T.J.].”
(Emphasis added.)
Thus, the trial court’s finding was based upon a supposed “rebuttal” of a “presumption” of fatherhood, a rebuttal based on evidence regarding who the biological father might be. The Court of Civil Appeals’ “affirmance” of that order, however, revolved around a different concern, namely whether the evidence did or did not establish that T.J. had held himself as the “natural” father of the child. If this were a case in which the trial court’s order had failed to state any basis for its decision and the materials before us did not otherwise reveal the basis for the trial court’s decision, we and the Court of Civil Appeals could impute to the trial court a ground not actually expressed by it, provided that there was substantial evidence to support any factual findings that would be necessary to such a ground. This would be true because of the principle that, in the absence of a contrary indication in the trial court’s order or otherwise in the record, we will presumé that the trial court knows the law and that the trial court has made those factual findings necessary to support its judgment under the applicable law. See, e.g., Lemoine Co. of Alabama, L.L.C. v. HLH Constructors, Inc., 62 So.3d 1020, 1024 (Ala.2010) (“ ‘When evidence is taken ore tenus and the trial judge makes no express findings of fact, this Court will assume that the trial judge made those findings necessary to support the judg- *752 merit.’ ” (quoting Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala.1992) (emphasis added))).
Here, however, the trial court’s order, as well as the trial judge’s brief to this Court, does reveal the basis for that court’s decision. We therefore are not at liberty to impute some different ground to the trial court as the basis for its decision. Concomitantly, we cannot be concerned that we are without a transcript by which to evaluate the extent of evidentiary support for any such different ground.
It is true that (subject to due-process limitations), even when the trial court’s order or other aspects of the record do indicate the specific ground for the trial court’s decision, an appellate court can uphold a trial court’s judgment on an alternative valid legal ground. In that circumstance, however, the alternative ground must be a “legal” ground. That is, the appellate court must be able to seize upon this alternative ground as a matter of law based on the record or the materials before it, because it does not otherwise have at its disposal necessary factual findings, either actual or imputable, to use in support of the alternative ground. For example, as the Court of Civil Appeals put it in Gartman v. Hill, 874 So.2d 555, 559 (Ala.Civ.App.2003):
“While it is true that this Court will affirm the judgment appealed from if supported on any valid legal ground, the evidence in this case falls well short of what would be required for this Court to hold, as a matter of law, that [the plaintiff] is entitled [to prevail on a factual theory as to which the trial court made no finding].”
(Final emphasis added.)
The Court of Civil Appeals’ concern about the absence of a transcript relates to a factual theory as to which, as in Gart-man, “the trial court made no factual finding.” 878 So.2d at 559. See Pavilion Dev., L.L.C. v. JBJ P’ship, 979 So.2d 24, 36 (Ala.2007) (“Although we have stated that an appellate court may affirm a judgment of a trial court for any valid reason, we do not consider [the appellee’s] arguments about the statutory requirements because the record here indicates that the trial court did not make any findings concerning, nor did it intend to base its judgment on, those alternative grounds.”); Ex parte Philon, 10 So.3d 1022, 1026 (Ala.2008) (Murdock, J., concurring specially) (“[T]he trial court made no factual finding as to whether Philon’s back injury was caused over time by changes to his gait resulting from his leg injury. Therefore, the only basis upon which the Court of Civil Appeals could have affirmed the order of the trial court on this alternative factual theory is if the Court of Civil Appeals could have determined, as a matter of law, that the record before it could not reasonably support any conclusion other than that Philon’s back injury occurred in the stated manner.”). Moreover, the materials before us are not merely silent as to the ground for the trial court’s decision; the trial court’s order and the trial judge’s brief to this Court in this case expressly state the specific basis for that court’s decision. Therefore, the only basis upon which the Court of Civil Appeals could have upheld the trial court’s order on the alternative factual theory at issue is if the Court of Civil Appeals could have determined, as a matter of law from the materials that were before it, that T.J., though he held the child out as his own, did not hold the child out as his “natural” child. Obviously, it could not do so.[4]
We have here a case in which the trial judge has expressly provided us in her *753 order and in her letter brief to this Court the specific ground for her ruling. That ground is that there was evidence that she believed “rebutted” the presumption that T.J. was the genetic father of the child. The trial court’s reliance upon this ground to order genetic testing was a legal error as to which the absence of an evidentiary transcript is irrelevant.

B. Merits

The long-standing recognition of “presumed fathers” in our law finds its origins in time-honored, common-law principles reflecting traditional values and concerns relating to adultery, the integrity of the family, and protection for both the father and the child in established father-child relationships. Accordingly, our law not only adheres to the general rule that a child with a “presumed father” may not be declared illegitimate by our courts, it protects both children and de facto fathers in preserving established parent-child relationships.
Section 26-17-204, Ala.Code 1975, states:
“(a) A man is presumed to be the father of a child if:
“(1) he and the mother of the child are married to each other and the child is born during the marriage;
“(2) he and the mother of the child were married to each other and the child is born within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce;
“(3) before the birth of the child, he and the mother of the child married each other in apparent compliance with law, even if the attempted marriage is or could be declared invalid, and the child is born during the invalid marriage or within 300 days after its termination by death, annulment, declaration of invalidity, or divorce;
“(4) after the child’s birth, he and the child’s mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with the law although the attempted marriage is or could be declared invalid, and:
“(A) he has acknowledged his paternity of the child in writing, such writing being filed with the appropriate court or the Alabama Office of Vital Statistics; or
“(B) with his consent, he is named as the child’s father on the child’s birth certificate; or
“(C) he is otherwise obligated to support the child either under a written voluntary promise or by court order;
“(5) while the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental relationship with the child by providing emotional and financial support for the child; or
“(6) he legitimated the child in accordance with Chapter 11 of Title 26.”
(Emphasis added.)
Section 26-17-204 continues:
“(b) A presumption of paternity established under this section may be rebutted only by an adjudication under Article 6 [§ 26-17-601 through § 26-17-638].”
*754 (Emphasis added.) Section 26-17-607(a), Ala.Code 1975, limits “adjudication^] under Article 6”:
“Except as otherwise provided in subsection (b), a presumed father may bring an action to disprove paternity at any time. If the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity.”
(Emphasis added.) The presumed father in this case does indeed “persist[ ] in his status.”
As a result, we have in this ease a trial court order that is expressly based on an error of law. The trial court clearly based its order on a factual finding that there was sufficient evidence to “rebut” the presumed-father status of T.J. In so doing, the trial court treated the presumed-father status established in Ala.Code 1975, § 26-17-204(a)(5), as no more than an evidentia-ry presumption to be rebutted by whatever evidence the trial court might assign sufficient credibility and weight. That is not the nature of the “presumption” with which we are dealing.
First, we are not dealing here with a “presumed” status as to the genetic or biological father of a child, but as to the legal father. The question is who, in the contemplation of the law, will be treated as the father. The trial court’s order and letter brief clearly reveal that the judge thinks her task is to determine who is the genetic father.
Second, the “presumed father” status is the result of a substantive rule of law, not an evidentiary presumption. Thus, it was that in P.G. v. G.H., 857 So.2d 828, 828 (Ala.Civ.App.2002), the court noted the distinction between the evidentiary standard for rebutting a traditional presumption of paternity under then § 26-17-5(b), Ala. Code 1975 (the predecessor statute to § 26-17-204(b)), and the substantive rule that actually prevents another party from challenging the presumed-father status of a man who persists in that presumption. As this Court stated in Ex parte Presse, 554 So.2d 406, 418 (Ala.1989):
“[T]he legal question is whether a man has standing to bring an action seeking to declare a child illegitimate and to have himself declared the father of that child. This is not permitted under the [Alabama Uniform Parentage Act], as long as there is a presumed father, pursuant to § 26-17-5(a)(1), who has not disclaimed his status as the child’s father. ...”
(Emphasis added.) See also Ex parte C.A.P., 683 So.2d 1010, 1012 (Ala.1996) (“A man not presumed to be the father, but alleging himself to be the father, may institute an action to have himself declared the father only when the child has no presumed father.” (emphasis added)); Hooten v. Hooten, 754 So.2d 634, 635 (Ala.Civ.App.1999) (“Our supreme court has held that no one ... has standing to challenge a presumed father’s paternity as long as the presumed father persists in claiming paternity of the child.”).
Despite the foregoing, the trial court treats the presumed-father status of T.J. under § 26-17-204(a)(5) as merely a re-buttable evidentiary presumption. She concluded that because the mother or grandmother put on evidence indicating that T.J. was in jail at the time of conception, the presumption created by § 26-17-204(a)(5) had been “rebutted.” The trial court even goes so far as to comment on T.J.’s subjective thoughts regarding the matter, stating that “it is unlikely that [T.J.] believed this child to be his ‘natural’ child when he was incarcerated at the likely time of conception,” a factor clearly not specified as a criterion under the statute.
*755 Again, the question is not whether the child is in fact the genetic or biological child of a presumed father. The rule embodied in § 26-17-204 and § 26-17-607(a) is a substantive rule of law as to who is to be deemed the legal father. It is a rule based on two time-honored ideas in our law: a child with a “presumed father” should not easily be declared illegitimate by our courts, and children with longstanding relationships with de facto parents should not be deprived of those relationships based merely on the fact that a trial court might believe testimony by the mother, for example, as to who she thinks the natural father might be. Likewise, as T.J. puts it:
“[T]o allow inquiry through genetic testing into the child’s biological paternity when the Father has not waived his presumption of paternity would be against the Code of Alabama and destructive of family integrity, relationships and privacy and against the public interest and law of Alabama.
“Based on § 26-17-204(a)(5), if T.J. meets the requirement set out by the AUPA he is the presumed father and no person may challenge his status. The Circuit Court has no discretion to rule against the law as set out by the AUPA. The public policy behind the AUPA is one of long history and importance with regard to the welfare, permanency and best interest of children.”
T.J.’s petition, at 17-18.
The trial court clearly erred by not recognizing these principles and, instead, entering an order for genetic testing that is at odds with them. It is this pure legal error in the trial court’s approach to this case that makes the particular order it entered one that we are now obligated to vacate.[5]
Before turning to a brief discussion of the judgment line in the main opinion, I pause to comment on two other aspects of the analysis offered by the main opinion. First, the main opinion makes reference to what it calls “the marital presumption” in the course of explaining that “we now apply [Presse’s ] principles where the marital presumption is not applicable” and presumed fatherhood exists “under § 26-17-204(a)(5).”' 89 So.3d at 748. I offer two observations in regard to this reference.
First, the objective of the statute insofar as is germane to a decision in the present case is to provide a rule of decision as between alt presumed fathers, on the one hand, and all other persons, on the other hand. In this context, the statute gives priority over all other persons to one who falls within any of the six categories of presumed fathers outlined in § 26-17-204(a)(1) through (6). As noted, § 26-17-204(b) states simply that “[a] presumption of paternity established under this section may be rebutted only by an adjudication under Article 6 [§ 26-17-601 through § 26-17-688].” Insofar as contests between presumed fathers and persons who are not presumed fathers, the language of the statute has never suggested any basis for some different level of protection of a presumed father whose status relates to one of the four categories that involves a marriage (or an attempted marriage).
Second, this lack of differentiation between categories of presumed fathers (or, *756 for that matter, between the positions of those who might attempt to challenge a presumed father’s status), is now corroborated by the 2008 amendment to the AUPA. This amendment actually broadened the statutory language that was in place when Presse, C.A.P., and other cases cited above were decided. As a result of that amendment, § 26-17-607(a) now expressly provides, without any differentiation between those categories of presumed fathers described in § 26-17-204(a): “If the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity.” (Emphasis added.)
Finally, I am concerned as to the manner in which the main opinion discusses the United States Supreme Court’s decision in Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). I am particularly concerned about the following characterization of Michael H. and other cases: “[T]he United States Supreme Court and this Court have held that biological ties are not as important as parent-child relationships.... ” 89 So.3d at 747. I believe the import of Michael H. and our cases is merely that protection of biological parents’ rights in the Due Process Clause of the United States Constitution does not prevent a state from subordinating those rights to a de facto parent-child relationship in an appropriate case. I believe it is incorrect to state that there is some general rule that has been adopted by both the United States Supreme Court and this Court to the effect that biological ties simply are “not as important” as de facto parent-child relationships.

C. Vacatur of the Trial Court’s Order

The main opinion concludes that the trial court erred by the manner in which it reached the conclusion that § 26-17-204(a)(5) does not apply to T.J. I certainly agree with this conclusion, albeit for the reasons stated above, rather than the exact analysis offered by the main opinion. I would add, however, that given the nature of the legal error upon which the trial court’s order for genetic testing was based, I believe the appropriate relief at this juncture is the vacatur of that order. I respectfully dissent from the judgment offered by the main opinion to the extent that it does not order such a vacatur. After conducting further proceedings in accordance with this Court’s opinion, if the trial court determined that T.J. does not hold presumed-father status, it could at that juncture issue such new order as it deemed appropriate.

. In addition, of course, the majority of the Court of Civil Appeals would have to be cor *753 rect in their strict understanding of what it means for a man to hold a child out ‘‘as” his natural child. In her dissent, Judge Thomas explains why she believes the majority's understanding of this term is incorrect, 74 So.3d at 454, and I am inclined to agree with her.

. As the main opinion notes, in order to vacate the particular order entered by the trial court, we do not have to go so far as to declare T.J. to be the legal or even the ‘‘presumed” father of the child, as the majority of the Court of Civil Appeals suggests in its opinion. We merely have to vacate the trial court’s order 'requiring genetic testing because it was based on a legal error and then remand the case for further consideration consistent with correct legal principles.