BOLIN, Justice.
T.J. seeks a writ of mandamus ordering the Montgomery Juvenile Court (“the juvenile court”) to adjudicate T.J. the presumed father of S.W. (hereinafter “the child”) and to vacate the juvenile court’s order authorizing genetic testing to establish the child’s paternity.

Facts and Procedural History

On September 3, 2009, the child’s maternal grandmother, R.W., filed a petition in the juvenile court against the mother, C.W., and T.J., seeking custody of three of her grandchildren, including the child. The maternal grandmother’s petition was not included in the materials attached to this mandamus petition, but T.J. contends that the maternal grandmother’s petition named him as the father. On October 30, 2009, T.J. filed a petition in the juvenile court seeking custody of the child. T.J.’s custody petition also is not included in the materials submitted with this mandamus petition. T.J. contends that in his custody petition he alleged that he was the biological father of the child and that the child had lived with him since the child was born.
On November 13, 2009, the mother filed a petition seeking custody of the child. According to the briefs filed in this Court, the mother named J.H. as the father of the child. On January 22, 2010, the mother filed a motion requesting genetic testing of T.J. and J.H. to establish paternity of the child. T.J. objected. That same day, T.J. filed a motion to reconsider and an affidavit of paternity with the juvenile court. None of those documents was attached to the materials submitted to this Court.
On December 3, 2010, the juvenile court held a hearing on the issue of the mother’s *746 request for genetic testing to determine the paternity of the child. On December 17, 2010, the juvenile court entered an order granting the mother’s motion for genetic testing. Specifically, the juvenile court found that, because T.J. was incarcerated at the time the child was conceived and the mother was five months’ pregnant when T. J. was released from prison, it was “unlikely” that T.J. in good faith believed he was the biological father of the child. Based on this finding, the juvenile court concluded that T.J. could not be the child’s presumed father under § 26-17-204(a)(5), Ala.Code 1975, and authorized the genetic testing.
On December 29, 2010, T.J. filed a petition for a writ of mandamus with the Court of Civil Appeals, asking that court to direct the juvenile court to recognize him as, and to adjudicate him, the presumed father of the child and to vacate the order authorizing genetic testing to determine the paternity of the child. The only material attached to the mandamus petition before the Court of Civil Appeals was the juvenile court’s order. The Court of Civil Appeals denied the petition on the ground that, because there was no record of the proceedings before the juvenile court, there was no way to know whether T.J. had presented sufficient evidence from which to determine that he had held the child out to the public as his natural child as described in § 26-17-204(a)(5). Ex parte T.J., 74 So.3d 447 (Ala.Civ.App.2011).
On July 8, 2011, T.J. filed a petition for a writ of mandamus with this Court, arguing that the juvenile court erred in concluding that he must be the biological father of the child in order to be a presumed father under § 26-17-204(a)(5) and, therefore, that this Court should order the juvenile court to recognize him as the presumed father and to vacate its order requiring genetic testing.

Discussion

A writ of mandamus is an extraordinary remedy available only when the petitioner demonstrates: “ ‘(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.’ ” Ex parte Nall, 879 So.2d 541, 543 (Ala.2003) (quoting Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001)). A petition for a writ of mandamus is the proper vehicle for seeking review of an interlocutory order. Ex parte A.M.P., 997 So.2d 1008, 1014 (Ala.2008) (mandamus petition proper means of seeking review of interlocutory order granting petition to adopt); Ex parte D.J.B., 859 So.2d 445 (Ala.Civ.App.2003) (mandamus review of nonfinal order dismissing ex-husband’s motion seeking a paternity determination was proper).
In Alabama, pursuant to the Alabama Uniform Parentage Act, Ala.Code 1975, § 26-17-101 et seq. (“the AUPA”), a presumption of paternity arises in favor of the mother’s husband when (1) a child is born during the marriage (§ 26 — 17—204(a)(l)); (2) a child is conceived during the marriage (§ 26-17-204(a)(2)); (3) a child is conceived or born during an invalid marriage (§ 26-17-204(a)(3)); or (4) a child is born before a valid or invalid marriage and the husband took some voluntary step to establish his paternity, such as acknowledging paternity, consenting to being named on the child’s birth certificate, or being obligated to pay child support (§ 26-17-204(a)(4)). A presumption of paternity arises outside of marriage (1) when a man receives the child into his home and openly holds the child out as his natural child or otherwise openly holds the child out as his natural child and establishes a significant parental relationship by providing emo *747 tional and financial support (§ 26-17-204(a)(5)); or (2) when a man legitimated the child pursuant to § 26-11-1 et seq., Ala.Code 1975 (§ 26-17-204(a)(6)).
Section 26-17-204(b) provides that a presumption of paternity established under § 26-17-204 may be rebutted by an adjudication of paternity under § 26-17-601 et seq., Ala.Code 1975. Section 26-17-204(b) goes on to provide that, in the event two or more presumptions arise, the presumption founded on the weightier considerations of public policy and logic, based on the facts, shall control. Last, § 26-17-204(b) provides that a court order establishing paternity of a child by another man rebuts a presumption of paternity.
In the present case, the controlling issue is whether the juvenile court erred in concluding, based on evidence indicating that T.J. was not the biological father of the child, that § 26-17-204(a)(5) was not applicable to T.J. We conclude that it did err. T.J. did not lose his ability to present evidence that he was a presumed father under § 26-17-204(a)(5) simply because he may not be the biological father.[1] Section 26-17-204(b) provides that if two or more presumptions arise, the presumption that on the facts is founded on the weightier considerations of public policy and logic will control. If the legislature had intended that only a biological father can be a presumed father under the presumptions set out in § 26-17-204(a)(l) through (6), it would not have provided for a weighing among two competing presumptions under § 26-17-204(b), because there can be only one biological father.[2] Moreover, the United States Supreme Court and this Court have held that biological ties are not as important as parent-child relationships that give young children emotional stability. In Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989), a plurality of the Supreme Court reaffirmed the presumed paternity of a nonbiological father whose presumption as the parent of the child arose out of his marriage to the mother at the time of the child’s birth, consequently denying the biological father’s claim of paternity. Although blood-test results proved that the presumed father was not the biological father, the Supreme Court relied upon legal history and tradition to uphold the validity of the marital presumption. See also Caban v. Mohammed, 441 U.S. 380, 397, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979) (Stewart, J., dissenting)(“Parental rights do not spring full-blown from the biological connections between parent and child. They require relationships more enduring.”).
In Ex parte Presse, 554 So.2d 406 (Ala.1989), this Court considered whether “a man claiming to be the father of a child conceived and born during the marriage of its mother to another man [has] standing under the [then existing AUPA] to initiate an action to establish that he is the father of the child, where the presumed father *748 persists in the presumption that he is the father.” 554 So.2d at 411.[3] The court answered the question in the negative, determining that the presumption of paternity accorded the man married to the mother at the time of the child’s conception and birth was, as a matter of public policy and logic, weightier than any other presumption provided for in the statute, thus foreclosing another man from challenging the child’s paternity. 554 So.2d at 412. See also Ex parte C.A.P., 683 So.2d 1010 (Ala.1996) (holding that a man cannot challenge the paternity of a child born during the marriage of the mother to another man regardless of whether the child was conceived during the marriage so long as the husband persists in the marital presumption of paternity).
The presumed father’s presumption of paternity in Ex parte Presse arose from the marital presumption that a child born during a marriage or within 300 days after the termination of a marriage is the child of the husband. In Ex parte Presse we held that the provision of the AUPA that created a presumption of paternity if the man received a child into his home and openly held out the child as his natural child did not allow that man to assert paternity to the exclusion of the man who was married to the child’s mother when the child was conceived and born, simply because the man had since married the mother, who was now divorced. Ex parte Presse was based specifically upon the application of the marital presumption. However, in Ex parte Presse, we recognized that the AUPA “espouses principles that seek to protect the sanctity of family relationships,” 554 So.2d at 412, and we now apply those principles where the marital presumption is not applicable and the only issue is whether the man claiming to be the presumed father, “while the child is under the age of majority, ... receive[d] the child into his home and openly [held] out the child as his natural child or otherwise openly [held] out the child as his natural child and established] a significant parental relationship with the child by providing emotional and financial support for the child” under § 26-17-204(a)(5).
We also find support for our conclusion that the legislature did not intend for biology to prevent a presumption of paternity under § 26-17-204(a)(5) in Judge Thomas’s dissent in Ex parte T.J., in which she discusses the phrase “openly holds out the child as his natural child”:
“I understand that the use of the word ‘as’ in the phrase ‘openly holds out the child as his natural child’ is perhaps not entirely clear in meaning. However, I read ‘as’ in this context as meaning ‘in the way or manner that,’ ‘in accordance with what or the way in which,’ or ‘in the capacity, character, condition, or role of.’ Merriawr-Webster’s Collegiate Dictionary 71 (11th ed. 2003). Likewise, to ‘hold out’ is defined as ‘to represent to be,’ id. at 592, while ‘represent’ is defined as ‘to describe as having a specified character or quality.’ Id. at 1057. Thus, subsection (a)(5) establishes a presumption of paternity in a man who openly treats a child in the same manner he would treat his biological child, who openly treats a child in accordance with the way that a father would treat his biological child, or who openly treats the child as if the child had assumed the role of his biological child ‘and establishes a significant parental relationship with the *749 child by providing emotional and financial support for the child.’ § 26-17-204(a)(5). Read in this way, § 26-17-204(a)(5) serves to promote a significant parental relationship over a mere biological connection. Such a reading finds generous support in comments to the [AUPA].”
74 So.3d at 454 (Thomas, J., dissenting).
The fact that T.J. may not be the child’s biological father does not negate his ability to present evidence that he is the presumed father of the child under § 26-17-204(a)(5) by virtue of his relationship with the child, because the presumption established by § 26-17-204(a)(5) is based on the man’s relationship with the child, not on a biological connection. Accordingly, the juvenile court’s legal conclusion that § 26-17-204(a)(5) does not apply to T.J., because, according to the court’s reasoning, he could not be the child’s biological father, was in error. Because T.J. has demonstrated a clear legal right to proceed under § 26-17-204(a)(5), he is entitled to relief from that erroneous conclusion of law. However, we cannot grant T.J.’s request to order the juvenile court to adjudicate him the presumed father of the child and to vacate the juvenile court’s order authorizing genetic testing to determine the paternity of the child. Based on the briefs submitted to this Court, the evidence in that regard appears to be disputed, and T.J. did not provide this Court with a transcript of the hearing in the juvenile court. Therefore, we cannot conclude that there was sufficient evidence to hold that T.J. is the presumed father of the child under § 26-17-204(a)(5). Accordingly, the juvenile court must determine, based on the testimony submitted at the hearing, whether T.J. presented sufficient evidence indicating that he received the child into his home and openly held out the child as his natural child or that he otherwise openly held out the child as his natural, child and established a significant parental relationship with the child by providing emotional and financial support for the child. If the juvenile court finds that the evidence that T.J. did so is sufficient and that, therefore, T.J. is the presumed father of the child under § 26-17-204(a)(5), then the order requiring genetic testing must be vacated. However, if the juvenile court finds that T.J. did not present sufficient evidence for such a finding under § 26-17-204(a)(5), then the order requiring genetic testing may stand.
PETITION DENIED WITH INSTRUCTIONS.
MALONE, C.J., and WOODALL, STUART, PARKER, SHAW, MAIN, and WISE, JJ., concur.
MURDOCK, J., dissents.

. T.J. persists in his contention that he is the biological father of the child because he disputes the date of conception and contends that the child was born prematurely.

. We recognize that § 26-17-607(b) of the AUPA provides for a weighing of competing presumptions in an action where a presumed father seeks to disprove parentage. Section 26-17-607(b) provides that a presumption of paternity may be rebutted by clear and convincing evidence and that, in the event two or more conflicting presumptions arise, then the one founded on the weightier considerations of public policy and logic will prevail. Section 26-17-607(b) also provides that a presumption of paternity is rebutted by a court judgment establishing paternity of a child by another man. Section 26-17-607(b) is applicable when a man has been found to be a presumed father and subsequently seeks to rebut that presumption. In the present case, T.J. has not yet been found to be the presumed father.

. The former AUPA was repealed effective January 1, 2009, and the current AUPA, § 26-17-101 et seq., became effective that same day. The presumptions of paternity listed in former § 26-17-5(a) are similar to the presumptions of paternity listed in § 26-17-204(a).