cause for that court to apply the proper standard.

EX PARTE Jami L. McLENDON

(In re: Jami L. McLendon

v.

John David Mills, Jr.)

1141134

Supreme Court of Alabama.

Jan. 29, 2016

M.J.M.

v.

R.M.B. and C.P.

R.M.B.

v.

M.J.M.

2140758.

Court of Civil Appeals of Alabama.

Jan. 8, 2016.

Certiorari Denied March 25, 2016
Alabama Supreme Court 1150411.

Jennifer Evans Sanford, Fairhope, for appellant/cross-appellee M.J.M.

Stephen P. Johnson of Brackin, McGriff &. Johnson, P.C., Foley, for appellee/cross-appellant R.M.B. and appellee C.P.

MOORE, Judge.

M.J.M. appeals from a judgment of the Baldwin Circuit Court dismissing his petition to establish the paternity of K.P. ("the child"), as well as his separate petition seeking custody of the child, for lack of standing. R.M.B. ("the mother") cross-appeals that portion of the judgment ordering her to pay M.J.M.'s attorney's fees. We affirm the trial court's judgment with regard to both the appeal and the cross-appeal.

*Procedural History*

On February 20, 2015, M.J.M. filed a petition seeking to establish his paternity of the child, whose date of birth is January 24, 2012, and a separate petition seeking custody of the child. On March 23, 2015, M.J.M. filed a motion to add C.P. as an indispensable party to the action; he alleged that the mother had told C.P. that he was the father of the child and that C.P. had "executed an affidavit of paternity and listed his name as the father on the child's birth certificate." M.J.M. alleged further that, on October 6, 2013, the mother had informed him that he was actually the father of the child. M.J.M.'s motion to add C.P. as a party was granted on March 23, 2015. On April 9, 2015, the mother filed a motion to dismiss M.J.M.'s petitions, asserting that C.P. was the presumed father of the child and that he was persisting in his presumption of paternity;

she attached an affidavit executed by C.P. in support of her motion. On June 16, 2015, the mother filed an objection to a June 12, 2015, affidavit regarding attorney's fees filed by M.J.M.'s attorney and a request for a specific accounting. The trial court held a trial on the matter on June 12, 2015. On June 29, 2015, the trial court entered a judgment dismissing M.J.M.'s petitions for lack of standing. The trial court also found that the mother had committed fraud upon M.J.M. and C.P. regarding the paternity of the child and assessed attorney's fees against the mother in an amount to be set forth in an affidavit to be filed by M.J.M.'s attorney. On July 1, 2015, the trial court entered an order, based on the affidavit that had been submitted by M.J.M.'s attorney on June 12, 2015, ordering the mother to reimburse M.J.M. "$4,354.66 for attorney's fees, court costs, and service of process fees."

On July 2, 2015, the mother filed a post-judgment motion arguing that the award of attorney's fees was not authorized by statute. That motion was denied on July 8, 2015. M.J.M. timely appealed.[1] On July 20, 2015, the mother filed her notice of cross-appeal.

## Discussion

### Appeal

■ Section 26–17–607(a), Ala.Code 1975, a part of the Alabama Uniform Parentage Act ("the Act"), § 26–17–101 et seq., Ala.Code 1975, provides that "[i]f the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity." In this case, the trial court held that M.J.M. could not maintain his paternity action be-cause C.P., the presumed father of the child, persisted in his status as the legal father of the child. On appeal, M.J.M. argues that the trial court erred in finding that C.P. is the presumed father of the child who persists in his presumption of paternity and, thus, that M.J.M. lacked standing to assert his paternity of the child.

M.J.M. first argues that C.P. is not the presumed father of the child but, instead, is an acknowledged father. A "presumed father" is "a man who, by operation of law under Section 26–17–204, [Ala.Code 1975,] is recognized as the father of a child until that status is rebutted or confirmed in a judicial proceeding." § 26–17–102(17), Ala. Code 1975. On the other hand, an "acknowledged father" is "a man who has established a father-child relationship under Article 3 [of the Act]." § 26–17–102(1). Article 3 of the Act provides for the establishment of a father-child relationship through the execution of an acknowledgment of paternity, which acknowledgment "shall be considered a legal finding of paternity of the child." § 26–17–302(a)(5), Ala.Code 1975; *see also Ex parte S.T.*, 149 So.3d 1089, 1091 (Ala.Civ.App.2014) (" 'An acknowledgment of paternity takes effect upon the signature of both the mother and the putative father and the filing of the document with the Alabama Office of Vital Statistics.' " (quoting § 26–17–304(b))). C.P. executed an acknowledgment of paternity two days after the birth of the child.

"If a child has an acknowledged father, an individual, who is not a signatory to the acknowledgment of paternity and who seeks an adjudication of paternity

1. M.J.M. filed his notice of appeal on June 18, 2015, after the trial court announced its judgment in open court but before the trial court actually entered its judgment. Pursuant to Rule 4(a)(4) and (5), Ala. R.App. P., M.J.M.'s notice of appeal became effective on July 8, 2015, after the entry of the judgment and upon the denial of the mother's postjudgment motion.

·of the child may maintain a proceeding at any time after the effective date of the acknowledgment if the court determines that it is in the best interest of the child."

§ 26–17–609(b), Ala.Code 1975. M.J.M., a nonsignatory to the acknowledgment of paternity signed by C.P. and the mother, maintains that the trial court erred in dismissing his paternity action under § 26–17–607(a) because, he says, it should have applied § 26–17–609(b). However, M.J.M. did not argue this point to the trial court; therefore, this argument has not been preserved for appellate review. *See Andrews v. Merritt Oil Co.,* 612 So.2d 409, 410 (Ala.1992).

■ M.J.M. next argues that the trial court erred in finding that C.P. is the presumed father of the child. Under § 26–17–204(a)(4), Ala.Code 1975, a man is presumed to be the father of a child if,

"after the child's birth, he and the child's mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with the law although the attempted marriage is or could be declared invalid, and:

"(A) he has acknowledged his paternity of the child in writing, such writing being filed with the appropriate court or the Alabama Office of Vital Statistics; or

"(B) with his consent, he is named as the child's father on the child's birth certificate; or

"(C) he is otherwise obligated to support the child either under a written voluntary promise or by court order."

C.P. never married the mother, so he cannot be the presumed father of the child under § 26–17–204(a)(4).

However, the evidence adduced at the trial is sufficient to establish C.P.'s status as the presumed father of the child under § 26–17–204(a)(5), Ala.Code 1975. Section 26–17–204(a)(5) provides:

"A man is presumed to be the father of a child if:

" . . . .

"(5) while the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental relationship with the child by providing emotional and financial support for the child."

The mother testified that, at the time the child was born, she did not know who was the father of the child. She testified that she had known that there was a possibility that M.J.M. was the child's biological father but that she had not told him of the possibility. The mother testified that she had told C.P. that he was the child's biological father and that C.P. had signed an affidavit of paternity and was listed as the child's father on the child's birth certificate. C.P. testified that he was at the hospital with the mother when the child was born. He testified that he and the mother had ended their relationship sometime in 2013 and that, in October 2013, the mother had told him that he was not the child's biological father. C.P. testified that he had subsequently moved back in with the mother, that he had been raising the child, and that he wanted to continue raising the child. The mother also testified that C.P. has remained in the child's life and that he treats the child as his own child. Based on the foregoing evidence, the trial court could have properly concluded that C.P. had "receive[d] the child into his home and openly [held] out the child as his natural child." § 26–17–204(a)(5).

Genetic testing indicates that M.J.M. is the biological father of the child. C.P. has

recognized that the child is not his natural child since October 2013, when he was so informed by the mother. The fact that C.P. now acknowledges that the child is not his natural child does not affect his status as the child's presumed father under § 26–17–204(a)(5). *See Ex parte T.J.*, 89 So.3d 744, 749 (Ala.2012) ("The fact that T.J. may not be the child's biological father does not negate his ability to present evidence that he is the presumed father of the child under § 26–17–204(a)(5) by virtue of his relationship with the child, because the presumption established by § 26–17–204(a)(5) is based on *the man's relationship* with the child, not on a biological connection.").

Next, M.J.M. argues that C.P. did not persist in his claim of paternity. The evidence shows that, shortly before October 2013, C.P. and the mother "broke up." In October 2013, the mother informed M.J.M. that the child was his biological child. Since that time, M.J.M. has maintained a paternal relationship with the child through continuous scheduled visitation. The mother testified that M.J.M. is involved in the child's life. At some point in 2015, C.P. moved back into the mother's home, and he has been raising the child there. C.P. testified that he maintains that he is the legal father of the child and that he wants to raise the child.

M.J.M. asserts that, since he discovered his relationship to the child, he has financially supported the child and that he and the mother have openly acknowledged his paternity of the child.[2] However, M.J.M. cites solely the allegations in his petition for paternity and his separate petition for custody, which were not proven by any

evidence. M.J.M. also implies that C.P., after breaking off his relationship with the mother, no longer financially or emotionally supported the child, instead having acquiesced to M.J.M.'s assuming the paternal role. However, M.J.M. does not cite any evidence in the record to support those assertions. The evidence shows only that. C.P. suspended his relationship with the mother before October 2013, but that does not necessarily prove that C.P. had also ended his relationship with the child or that C.P. had ceded his paternal responsibilities to M.J.M. The record does not show that C.P. had disappeared from the life of the child only to reappear solely in an effort to defeat M.J.M.'s paternity action as M.J.M. contends.

The evidence fails to show that C.P. has ever disavowed the child. To the contrary, C.P. testified that he wished to remain the legal father of the child and that he intends to raise the child. We find that ample evidence supports the trial court's finding that C.P. has persisted in his claim of paternity. The fact that C.P. did not hire an attorney and formally contest M.J.M.'s paternity action does not detract from our conclusion.

Based on the foregoing analysis, we conclude that the trial court did not err in dismissing M.J.M.'s petitions for lack of standing. *See, e.g., C.L.W. v. Madison Cnty. Dep't of Human Res.*, 170 So.3d 669, 673 (Ala.Civ.App.2014) (holding that alleged biological father lacked standing to challenge paternity of a child who had a presumed father when alleged biological father failed to prove that the presumed father did not persist in his presumption of paternity).

---

**2.** M.J.M., however, has not argued that he is also a presumed father of the child and that the paternity of the child should have been decided under § 26–17–607(b), Ala.Code 1975 ("In the event two or more conflicting pre-

sumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control.").

*Cross–Appeal*

[3] The record contains evidence supporting the trial court's finding that the mother willfully misrepresented the paternity of the child to C.P. and M.J.M. Based on that fraudulent conduct, the trial court assessed attorney's fees against the mother. In her cross-appeal, the mother argues that the trial court lacked authority to award M.J.M. attorney's fees for the mother's fraud because the case was dismissed and because no statute specifically authorizes awarding attorney's fees for fraud.

Section 26–17–636(c)(1), Ala.Code 1975, provides, in part, that, in proceedings brought to adjudicate the paternity of a child, "[t]he court may order reasonable fees for attorneys . . . to be paid by the parties in such proportions as the court may direct." In *Cauthen v. Yates*, 716 So.2d 1256, 1262 (Ala.Civ.App.1998), this court, relying on an earlier version of § 26–17–636, as well as § 12–19–272(c), Ala.Code 1975, concluded that the award of attorney's fees in that paternity action was supported by the improper conduct that had been committed by Yates. Similarly, in the present case, the trial court concluded that the mother's improper conduct in not timely disclosing the truth regarding the paternity of the child warranted an award of attorney's fees. Given that the mother's misconduct ultimately led to the paternity action, we cannot conclude that the trial court exceeded its discretion in this regard. *See, e.g., Cauthen*, 716 So.2d at 1262 (noting that the award of attorney's fees for improper conduct is discretionary).

*Conclusion*

Based on the foregoing, the judgment of the trial court is affirmed.

APPEAL—AFFIRMED.

CROSS–APPEAL—AFFIRMED.

THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.