PARKER, Justice
(concurring specially).
I concur with the 'decision to quash 'the writ under the facts of this case because the petitioner failed to raise below the precise argument he now raises. Nonetheless, I write specially because this case presents an important issue: Whether a presumed father persists in his status as the legal father of a child after he consents to the termination of his parental rights.
The child’s mother was married to M.H. when , the child was bom. However, while M.H. was in prison, the mother had a relationship with L.R.B. Shortly after the child was born, both the mother and M.H. consented to the termination of their parental rights, and the child was placed in the custody of the State Department of *930 Human Resources. Thereafter, L.R.B. filed a “custody-modification petition” asking the court to order genetic testing to establish his paternity as to the child. L.R.B. argued that, upon termination of M.H.’s parental rights, M.H. no longer persisted in his status as the child’s father and that L.R.B. should be allowed to establish his paternity. The juvenile court held an evidentiary hearing and found that M.H. “persisted in his status as the child’s father” despite the fact that he had consented to the termination of his parental rights and, thus, that L.R.B. lacked standing to bring a paternity action. The Court of Civil Appeals affirmed the juvenile court’s judgment.
Under the Alabama Uniform Parentage Act (“the AUPA”),.“[a] man is presumed to be the father of a child if ... he and the mother of the child are married to each other and the child is born during the marriage.” § 26-17-204(a)(l), Ala. Code 1975. This Court has stated that no other man has standing to bring an action seeking to have himself declared the father of a child
“as long as there is a presumed father, pursuant to § 26-17-5(a)(l),[1] who has not disclaimed his status as the child’s father; consequently, another man, though he later marries the mother and lives with the mother and child, has no standing to challenge the presumed paternity of that child. Put another way, so long as the presumed father persists in maintaining his paternal status, not even the subsequent marriage of the child’s mother to another man can create standing in the other man to challenge the presumed father’s parental relationship.”
Ex parte Presse, 554 So.2d 406, 418 (Ala. 1989); § 26-17-607(a), Ala. Code 1975 (“If the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity.”). •
The Alabama Comment to § 26-17-607 indicates that “[sjubsection (a) follows Ex parte Presse, 554 So.2d 406 (Ala. 1989)[,] and its progeny that favor maintaining the integrity of the family unit and the father-child relationship that was developed therein.” This Court similarly recognized in Ex parte Presse, 554 So.2d at 412, that the AUPA “espouses principles that seek to protect the sanctity of family relationships.” Justice Murdock discussed the common-law principles behind the presumption of paternity in his dissent in Ex parte T.J., 89 So.3d 744, 753 (Ala. 2012):
“The long-standing recognition of ‘presumed fathers’ in our law finds its origins in time-honored, common-law principles reflecting traditional values and concerns relating to adultery, the integrity of the family, and protection for both the father and the child in established father-child relationships. Accordingly, our law not only adheres to the general rule that a child with a ‘presumed father’ may not be declared illegitimate by our courts, it protects both children and de facto fathers in preserving established parent-child relationships.”
The United States Supreme Court recognized that one purpose behind the strong presumption of paternity under the common law is “the interest in promoting the ‘peace and tranquillity of States and families,’ ... a goal that is obviously impaired by facilitating suits against husband and wife asserting that their children are illegitimate.” Michael H. v. Gerald D., 491 U.S. 110, 125, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (citing J. Schouler, Law of the Domestic Relations § 225, p. 304 (3d ed. *931 1882), and Boullenois, Traité des Status, bk. 1, p. 62).
In this case, the policy rationales underlying the presumption of paternity are not applicable. The presumed father in this ease consented to the termination of his parental rights, and there is no evidence indicating that he ever maintained any familial relationship with the child. The policy rationale behind preventing alleged biological fathers from asserting paternity as against presumed fathers is to protect the sanctity of family relationships. That goal is not achieved by forbidding an alleged biological father from establishing a relationship with a child whose presumed father has consented to having his rights to parent the child terminated.
Judge Moore, in his dissent below recognized as much:
“When a presumed father voluntarily waives his parental rights to his child and consents to the entry of a judgment terminating his parental rights, thereby withdrawing his presence and care from the child, none of the principled justifications underlying the holding in Ex parte Presse remain to prevent another man from maintaining an action to disprove the paternity of the presumed father. The paternity action would not threaten any stable custodial situation between the child and the presumed father because that custodial situation no longer exists. On the other hand, by allowing the paternity action, the law would permit another, willing man to prove his paternity so as to provide a legal father to the child. Section 26-17-607 was not intended by the legislature to apply in the circumstances present in this case.”
L.R.B. v. Talladega Cty. Dep’t of Human Res., 223 So. 3d 923, 928-29 (Ala. Civ. App. 2016) (Moore, J., dissenting). I agree with Judge Moore’s reasoning and would similarly find the policy rationale behind § 26-17-607 inapplicable under these facts. I would find that a presumed father who consents to the termination of his parental rights is no longer persisting in his status as the legal father of a child.

, Now codified at § 26-17-204(a)(l).