THOMAS, Judge.
In December 2010, I.G. ("the mother") gave birth to R.W.D. ("the child"). At that time, the mother was living with R.D. ("the presumed father"), who attended the birth of the child, executed an affidavit or paternity, and is named as the father on the child's birth certificate. The mother and the child continue to live with the presumed father, who has held out the child as his own and has performed the duties of a father since the child's birth such that he qualifies as a presumed father under Ala. Code 1975, § 26-17-204(a)(5), a part of the Alabama Uniform Parentage Act ("the AUPA"), codified at Ala. Code 1975, § 26-17-101 et seq.
In early 2014, D.I. ("the alleged biological father") was informed by a friend that he was the biological father of the child. He contacted the mother and requested that a DNA test be performed; the mother consented and produced the child for a DNA test. Once the results of that test were obtained, the alleged biological father and his parents, M.I. and J.I. ("the alleged paternal grandparents"), requested of the mother that they be allowed to visit the child and she acquiesced. They visited with the child at the alleged paternal grandparents' home on three occasions in March 2014. However, when the presumed father learned that the alleged biological father was participating in the visits, he ended them. The alleged biological father then filed in the Walker Juvenile Court ("the juvenile court") an action seeking to establish his paternity of the child.
After receiving an adverse judgment in the juvenile court, the alleged biological father appealed that judgment to the Walker Circuit Court ("the circuit court"); the alleged biological father also asserted an as-applied constitutional challenge to *654 § 26-17-204(a)(5). The presumed father moved to dismiss the alleged biological father's action, arguing that, pursuant to Ala. Code 1975, § 26-17-607(a), the alleged biological father's paternity action should be barred. The circuit court, after a hearing, entered a judgment granting that motion on June 22, 2017. The alleged biological father timely appealed the order dismissing his action, arguing that (1) the presumed father failed to persist in his status, (2) the alleged biological father's petition was not a petition to disprove the presumed father's paternity and was therefore not barred by § 26-17-607(a), (3) the circuit court erred by interpreting § 26-17-607(a) in such a way as to render § 26-17-204(b) and § 26-17-607(b)"null and void," (4) the circuit court's interpretation and application of § 26-17-607(a) to preclude the alleged biological father from seeking to establish his paternity violates what the alleged biological father describes as his "fundamental constitutional rights to direct and participate in the upbringing of" the child, and (5) the present case is distinguishable from various other cases interpreting and applying the AUPA. The mother and presumed father and the attorney general have each filed briefs in support of the circuit court's judgment.
In order to effectively discuss the alleged biological father's arguments, we must set out the relevant statutes. Section 26-17-204 establishes the situations under which a man is presumed by law to be a child's father. The statute reads, in pertinent part, as follows:
"(a) A man is presumed to be the father of a child if:
"....
"(5) while the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental relationship with the child by providing emotional and financial support for the child;
"....
"(b) A presumption of paternity established under this section may be rebutted only by an adjudication under Article 6 [of the AUPA]. In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control. The presumption of paternity is rebutted by a court decree establishing paternity of the child by another man."
§ 26-17-204.
Actions to establish parentage are governed by Ala. Code 1975, § 26-17-601 to § 26-17-613. According to by Ala. Code 1975, § 26-17-602(3), an action "to adjudicate parentage may be maintained by ... a man whose paternity of the child is to be adjudicated." However, the right to maintain a paternity action is specifically made subject to the provisions of § 26-17-607, which states:
"(a) Except as otherwise provided in subsection (b), a presumed father may bring an action to disprove paternity at any time. If the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity.
"(b) A presumption of paternity under this section may be rebutted in an appropriate action only by clear and convincing evidence. In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control. The presumption of paternity is rebutted *655 by a court decree establishing paternity of the child by another man."
The Alabama Comment to § 26-17-607 explains that
"[s]ubsection (a) follows Ex parte Presse, 554 So.2d 406 (Ala. 1989) [,] and its progeny that favor maintaining the integrity of the family unit and the father-child relationship that was developed therein. Once the presumed father ceases to persist in his parentage, then an action can be brought. If it is determined that the presumed father is not the biological father and non-parentage is found, a proceeding to adjudicate parentage may be brought under this article."
The alleged biological father first argues that the presumed father failed to persist in his presumption of paternity because he allowed the alleged biological father and the alleged paternal grandparents to visit with the child. According to the alleged biological father, "one cannot be said to 'persist' in one's status as father when one actively permits the visitation of the child with the child's actual paternal family." In his reply brief, the alleged biological father describes his argument as being that the presumed father has failed to persist in his claim that the child is his "natural child," indicating that he is arguing that the recognition of the child as having a biological father and associated paternal relatives somehow equates with the presumed father's failure to "hold[ ] out the child as his natural child," as is required to give rise to a presumption of paternity under § 26-17-204(a)(5). We disagree.
The circuit court concluded that the presumed father met the requirements of § 26-17-204(a)(5) because
"he was present at the minor child's birth, he is listed on the birth certificate as the child's father, he signed an acknowledgment of paternity four days after the child was born, the child came to his home from the hospital and has lived with him to date, he holds the minor child out to be his own and ... considers the child to be his own, and ... he has provided both financial and emotional support for the child."
The presumed father testified that he meets the child's day-to-day physical and emotional needs, that he regularly performs the duties of a father, including, most recently, reading to the child and assisting him with his homework, and that he and the child have close relationship. He explained that, upon being told of the alleged biological father's potential paternity, nothing had changed in his relationship with the child and that he had told the mother "that I was [the child's] father and I would do whatever I needed to do to maintain that." Thus, the evidence presented at the hearing on the motion to dismiss supports the circuit court's conclusion that the presumed father met the requirements of § 26-17-204(a)(5) and that he persists in his presumption of paternity.
The alleged biological father would have the presumed father's allowing visitation between the child and the alleged biological grandparents serve to negate his presumed paternity because the presumed father's actions are, in the alleged biological father's opinion, tantamount to a recognition that the child is not the presumed father's "natural child." Both our supreme court and this court have recognized that a man's knowledge or admission that he is not the biological father of a child does not prevent him from being presumed to be the legal father of a child under § 26-17-205(a)(5). See Ex parteT.J., 89 So.3d 744, 748-49 (Ala. 2012) ; D.F.H. v. J.D.G., 125 So.3d 146, 154 (Ala. Civ. App. 2013). As our supreme court explained:
*656 "We also find support for our conclusion that the legislature did not intend for biology to prevent a presumption of paternity under § 26-17-204(a)(5) in Judge Thomas's dissent in Ex parte T.J., [74 So.3d 447 (Ala. Civ. App. 2011),] in which she discusses the phrase 'openly holds out the child as his natural child':
" 'I understand that the use of the word "as" in the phrase "openly holds out the child as his natural child" is perhaps not entirely clear in meaning. However, I read "as" in this context as meaning "in the way or manner that," "in accordance with what or the way in which," or "in the capacity, character, condition, or role of." Merriam-Webster's Collegiate Dictionary 71 (11th ed. 2003). Likewise, to "hold out" is defined as "to represent to be," id. at 592, while "represent" is defined as "to describe as having a specified character or quality." Id. at 1057. Thus, subsection (a)(5) establishes a presumption of paternity in a man who openly treats a child in the same manner he would treat his biological child, who openly treats a child in accordance with the way that a father would treat his biological child, or who openly treats the child as if the child had assumed the role of his biological child "and establishes a significant parental relationship with the child by providing emotional and financial support for the child." § 26-17-204(a)(5). Read in this way, § 26-17-204(a)(5) serves to promote a significant parental relationship over a mere biological connection. Such a reading finds generous support in comments to the [AUPA].'
" 74 So.3d at 454 (Thomas, J., dissenting)."
Ex parte T.J., 89 So.3d at 748-49.
Thus, a biological link between a man and a child is not required to establish legal parentage under § 26-17-204(a), and a presumed father may well know that he is not the biological father of a child. His acceptance of that fact is not an abandonment of his presumption; nor should be his willingness to recognize the child's biological father or other biological relatives, provided, of course, that he retains his role as the child's legal father by continuing to hold out the child as his natural child and by continuing to provide emotional and financial support to and for the child. In fact, we have held that, absent proof that a presumed father has "ended his relationship with the child or ... ceded his paternal responsibilities to [another man]," a presumed father's knowledge of another man's claimed paternity coupled with that man's involvement in the child's life is not alone sufficient evidence to compel a finding that the presumed father has not persisted in his status under § 26-17-204(a). M.J.M. v. R.M.B., 204 So.3d 366, 370 (Ala. Civ. App. 2016).[1] We therefore reject the alleged biological father's argument that the presumed father's recognition of the alleged biological father's potential paternity and the presumed father's allowance of brief visitation with the alleged biological father and the alleged paternal grandparents negated the presumption of legal paternity in the presumed father or resulted in an abandonment of that presumption.
Having decided that the presumed father has persisted in his paternity, we turn now to a discussion of the interplay between, and the operation of, §§ 26-17-204(b), 26-17-602(3), 26-17-607(a), and *657 26-17-607(b). The alleged biological father argues that his action was an action to establish his own paternity and not an action to disprove the presumed father's paternity, which, he appears to admit, would be precluded by § 26-17-607(a). Thus, he says, he is entitled to bring his action under § 26-17-602(3), prove his paternity with genetic evidence, and, then, if he is successful, challenge, or rebut, the presumed father's status in an action brought under § 26-17-204(b), which requires a court to weigh competing presumptions arising under § 26-17-204(a), or under § 26-17-607(b), which allows a presumption of paternity to be rebutted with clear and convincing evidence. To prevent him from doing so, he says, restricts both § 26-17-204(b) and § 26-17-607(b) to the point that they have no field of operation, a result, he says, which compels the conclusion that the circuit court's interpretation of the relevant statutes is incorrect. See Sullivan v. State ex rel. Atty. Gen. of Alabama, 472 So.2d 970, 973 (Ala. 1985) ("In determining legislative intent, statutes are, where possible, construed in harmony with statutes existing at the time of enactment, so that each is afforded a field of operation."). We cannot agree with the alleged biological father.
To aid us in addressing the alleged biological father's argument, we turn to the principles of statutory construction.
"This court must consider statutory provisions in the context of the entire statutory scheme, rather than in isolation. Siegelman v. Alabama Ass'n of School Bds., 819 So.2d 568, 582 (Ala. 2001). In ascertaining legislative intent, we must look to the entire act instead of isolated phrases or clauses. Lambert v. Wilcox County Comm'n, 623 So.2d 727, 729 (Ala. 1993). Moreover, it is 'the duty of the Court to harmonize and reconcile all parts of a statute so that effect may be given to each and every part: conflicting intentions in the same statute are never to be supposed or so regarded unless forced on the Court by unambiguous language.' Leath v. Wilson, 238 Ala. 577, 579, 192 So. 417, 419 (1939). When construing the language of a statute, this court must presume ' " 'that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.' " ' Ex parte Uniroyal Tire Co., 779 So.2d 227, 236 (Ala. 2000) (quoting Sheffield v. State, 708 So.2d 899, 909 (Ala. Crim. App. 1997) )."
Hays v. Hays, 946 So.2d 867, 877 (Ala. Civ. App. 2006) ; see also Dollar v. City of Ashford, 677 So.2d 769, 770 (Ala. Civ. App. 1995) (quoting Ex parte Jones Mfg. Co., 589 So.2d 208, 211 (Ala. 1991) ) (stating that " '[s]tatutes should be construed together so as to harmonize the provisions as far as practical' "). "Furthermore, we must give the words in a statute their plain, ordinary, and commonly understood meaning, and where plain language is used we must interpret it to mean exactly what it says." Bean Dredging, L.L.C. v. Alabama Dep't of Revenue, 855 So.2d 513, 517 (Ala. 2003) (citing Ex parte Shelby Cty. Health Care Auth., 850 So.2d 332 (Ala. 2002) ).
Although the language of § 26-17-602(3) provides a man seeking to have his paternity adjudicated standing to bring an action to establish paternity, that statute clearly provides that such standing is subject to, i.e., limited by, the provisions of § 26-17-607. Section 26-17-607(a) specifically provides that the paternity of a presumed father may not be challenged by any person, provided that the presumed father wishes to persist in his status as the legal father. The Alabama Comment to § 26-17-607 makes very clear the intent of *658 the legislature to continue to "favor maintaining the integrity of the family unit and the father-child relationship that was developed therein" first espoused by our supreme court in its interpretation of the former AUPA in Ex parte Presse, 554 So.2d 406 (Ala. 1989). That is, the AUPA does not allow even proof that the child is not the biological child of the presumed father to overcome his status unless he permits it by choosing not to persist in his status as the presumed father. See, e.g., D.F.H., 125 So.3d at 154. To allow the alleged biological father to prove his paternity in one action so that he can disprove the presumed father's paternity in another would run afoul of the prohibition in § 26-17-607(a) against allowing another individual to challenge the presumed father's paternity despite his persistence. See Ex parte C.A.P., 683 So.2d 1010, 1012 (Ala. 1996) (deciding under the former AUPA that "[a] man not presumed to be the father, but alleging himself to be the father, may institute an action to have himself declared the father only when the child has no presumed father"). Thus, we conclude that the circuit court properly interpreted and applied the relevant statutes to determine that the alleged biological father's action should be dismissed, regardless of whether his action is considered to be one to establish his own paternity or one intended to disprove the presumed father's paternity.
We turn now to the alleged biological father's specific argument that the interpretation given to the relevant statutes must be incorrect because it does not allow § 26-17-204(b) and § 26-17-607(b) to have a field of operation. See Sullivan, 472 So.2d at 973 (indicating that multiple statutes governing the same subject should be construed so as to be certain that each is "afforded a field of operation"). The alleged biological father is correct that § 26-17-607(b) allows for a presumption of paternity arising under § 26-17-204(a) to be rebutted by clear and convincing evidence. However, the alleged biological father is incorrect insofar as he contends that the construction of § 26-17-607(a) given to the statute by the courts of this state somehow precludes § 26-17-607(b) from having a field of operation. Section 26-17-607(a) permits a presumed father to bring an action to disprove the presumption of his paternity. To do so, § 26-17-607(b) provides, he must present clear and convincing evidence to rebut the presumption that he is the father of the child. See Ex parte T.J., 89 So.3d at 747 n.2 (indicating that § 26-17-607(b) applies when a presumed father seeks to rebut the presumption of paternity). Thus, despite the alleged biological father's contentions, § 26-17-607(b) has a clear field of operation, regardless of the fact that § 26-17-607(a) has been construed to preclude any individual from challenging a presumed father's status when he desires to persist in that status.
Insofar as the alleged biological father challenges the circuit court's interpretation of § 26-17-607(a) to preclude a man in the alleged biological father's position from proving his paternity as somehow impermissibly limiting the field of operation of § 26-17-204(b), we note that § 26-17-204(b) would have no application to the alleged biological father in the present case. Section 26-17-204(b) requires that a trial court weigh competing presumptions of paternity that might arise under § 26-17-204(a). The alleged biological father does not argue that he presented evidence indicating that he meets any of the requirements for presumed fatherhood under § 26-17-204(a), and no such evidence exists in the record.[2] We further note that, *659 even had the alleged biological father presented evidence indicating that he is the child's biological father, he would not be a "presumed father" under § 26-17-204(a). Thus, at no point in the present case was the circuit court faced with conflicting presumptions such that it was required to weigh them under § 26-17-204(b). The field of operation of § 26-17-204(b) continues to be, as always, the determination of the weightier presumption of paternity when the facts yield two or more potential presumed fathers. See Ex parte Kimbrell, 180 So.3d 30 (Ala. Civ. App. 2015) (explaining that a trial court is to weigh competing presumptions of paternity that may arise under § 26-17-204(a) ).
The alleged biological father next contends that the construction of the applicable statutes violates his "constitutional right" in the rearing and parentage of his child. To support his argument, the alleged biological father cites only Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), and Meyer v. Nebraska, 262 U.S. 390, 399-401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), both of which discuss the fundamental liberty interest[3] that parents have in the care, custody, and control of their children in contexts not relevant here. That interest, he contends, merits protection and cannot be taken away without due process of law.
However, the alleged biological father does not discuss how the pronouncements of the United States Supreme Court, several of which indicate that an unwed father in the position of the alleged biological father does not have a fundamental right meriting the same protection granted to a married father's right to the care, custody, and control of his child, impact his assertion of that right in the present case.[4] See, *660 e.g., Lehr v. Robertson, 463 U.S. 248, 261-62, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) ; Caban v. Mohammed, 441 U.S. 380, 392, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979). Nor does the alleged biological father explain the appropriate standard to be applied to a constitutional challenge of this nature, which standard varies based on the nature of the right claimed. See C.E.G. v. A.L.A., 194 So.3d 950, 955-56 (Ala. Civ. App. 2015) (explaining that, in order to determine whether a party's substantive due-process rights have been infringed, a court must first determine the nature of the right alleged to have been infringed because the appropriate level of scrutiny varies depending on the nature of the right). The alleged biological father also fails to recognize or discuss the several opinions from the courts of this state that have rejected similar constitutional challenges to both the former AUPA and the current AUPA. See, e.g., Ex parte C.A.P., 683 So.2d 1010 (Ala. 1996) ; Ex parte Presse, 554 So.2d 406 (Ala. 1989) ; M.J.M. v. R.M.B., 204 So.3d 366 (Ala. Civ. App. 2016) ; and C.E.G. v. A.L.A., 194 So.3d 950 (Ala. Civ. App. 2015).
Both this court and our supreme court have cautioned that mere citation to general propositions without developed arguments applying applicable legal principles to the facts of the case on appeal does not satisfy an appellant's duty under Rule 28(a)(10), Ala. R. App. P.
" Rule 28(a)(10) [, Ala. R. App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived. Moore v. Prudential Residential Servs. Ltd. P'ship, 849 So.2d 914, 923 (Ala.2002) ; Arrington v. Mathis, 929 So.2d 468, 470 n.2 (Ala. Civ. App. 2005) ; Hamm v. State, 913 So.2d 460, 486 (Ala. Crim. App. 2002). 'This is so, because " 'it is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.' " ' Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala. 2007) (quoting Butler v. Town of Argo, 871 So.2d 1, 20 (Ala. 2003), quoting in turn Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala. 1994) )."
White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala. 2008).
The fact that an appellant raises a constitutional issue does not preclude application of Rule 28(a)(10). See Sweatman v. Giles, 161 So.3d 212, 221 (Ala. Civ. App. 2013) (rejecting an argument that an inmate's First Amendment rights had been violated when the brief cited only the First Amendment and general authority regarding the right to free speech and the inmate did not allege that his right to free speech had been abridged). We have before cited United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), in which a federal court of appeals cautioned appellants: "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." See D.B. v. T.E., 203 So.3d 1255, 1258 (Ala. Civ. App. 2016) ; Huntsville City Bd. of Educ. v. Jacobs, 194 So.3d 929, 945 (Ala. Civ. App. 2014). The alleged biological father's constitutional argument is, in a *661 word, skeletal, and we are not inclined to develop his constitutional argument only to refute it with long-standing law on the matter. Thus, having found the argument to be insufficiently briefed, we decline to further consider the alleged biological father's argument.
The alleged biological father next argues that other cases applying the former and current AUPA are distinguishable because they rest on application of a marital presumption and therefore involve Alabama's public policy of protecting the intact family of a married couple. He specifically cites only J.O.J. v. R.M., 205 So.3d 726 (Ala. Civ. App. 2015), and D.F.H. v. J.D.G., 125 So.3d 146 (Ala. Civ App. 2013). He concedes that "[t]he institution of marriage, under the public policy of the State of Alabama, remains entitled to some degree of protection and deference." However, he then contends that "[t]here is no such public policy which is applicable to the 'institution' of unmarried persons living together, and it is therefore inappropriate to rely on cases involving married presumed fathers in deciding the instant case, which features an unmarried presumed father."
Of course, in reaching the conclusion that the alleged biological father is not entitled to institute an action to prove his paternity, neither the circuit court nor this court are merely relying on caselaw involving married presumed fathers. As the above discussion illustrates, we are relying on the language of § 26-17-607(a), which makes no distinction between married or unmarried presumed fathers when it pronounces that "[i]f the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity." As former Justice Murdock explained in his dissenting opinion in Ex parte T.J.:
"Insofar as contests between presumed fathers and persons who are not presumed fathers, the language of the statute has never suggested any basis for some different level of protection of a presumed father whose status relates to one of the four categories that involves a marriage (or an attempted marriage).
"... [T]his lack of differentiation between categories of presumed fathers (or, for that matter, between the positions of those who might attempt to challenge a presumed father's status), is now corroborated by the 2008 amendment to the AUPA. This amendment actually broadened the statutory language that was in place when Presse, C.A.P., and other cases cited above were decided. As a result of that amendment, § 26-17-607(a) now expressly provides, without any differentiation between those categories of presumed fathers described in § 26-17-204(a) : 'If the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity.' (Emphasis added.)"
Ex parte T.J., 89 So.3d at 755-56 (Murdock, J., dissenting).
Furthermore, as we explained in C.E.G.,
"in its discussion of the public-policy considerations in Ex parte Presse, the supreme court appears to have found the marital presumption [of former § 26-17-5(a) ] to be a significant factor in its analysis. The decision in Ex parte Presse, however, concerned two conflicting presumptions of paternity within the former AUPA: one presumption [under former § 26-17-5(a)(1) ] based on a child's being born into a marriage and another presumption based on the holding out provision [contained in former 26-17-5(a)(4) ]. The supreme court also weighed the marital presumption *662 against the paternity claim based on a biological connection. Although the supreme court held that the marital presumption has a higher priority than the holding out presumption or a biological-connection claim, we do not view Ex parte Presse as establishing that the holding-out provision [of § 26-17-204(a)(5) ] lacks any public-policy rationale in any context, particularly when the mother has not married either man asserting paternity. The supreme court in Ex parte Presse stated that it was guided by principles of the former AUPA 'that seek to protect the sanctity of family relationships....' [ Ex parte Presse, 554 So.2d 406,] 412 [ ( Ala. 1989) ]. Regarding the public-policy considerations of the former AUPA, the supreme court recognized that ' "[t]he legislature explicitly chose not to grant standing to one claiming to be the natural father of a child with a presumed father." ' Ex parte Presse, 554 So.2d at 413 (quoting Chief Justice Torbert's dissenting opinion in Ex parte Anonymous, 472 So.2d 643, 644 (Ala. 1985) ) (emphasis omitted). The supreme court has further held that a man's 'interest in judicially establishing his alleged biological relationship to the child is outweighed by the obvious objectives of the [former AUPA], which are to provide for the psychological stability and general welfare of the child and to afford legitimacy to children whenever possible.' Ex parte C.A.P., 683 So.2d 1010, 1012 (Ala. 1996)."
C.E.G., 194 So.3d at 957. Based, in part, on this analysis, we rejected an argument that the presumption enuring to the presumed father in C.E.G. was somehow a lesser presumption merely because he was not married to the mother. Id. The AUPA makes no distinction between the marital presumptions of § 26-17-204(a)(1)-(4) and the holding-out presumption of § 25-17-204(a)(5), and, based on the language of § 26-17-607(a), the marital status of a presumed father is not relevant to its application, except in those situations when the trial court is weighing competing presumptions, as it was in Ex parte Presse. We therefore reject the alleged biological father's attempt to distinguish the present case from those cases involving married presumed fathers.
Finally, the alleged biological father contends that the present case is distinguishable from this court's opinion in M.J.M., which he candidly admits supports a determination that the dismissal of his paternity action was proper. In M.J.M., we considered whether the Baldwin Circuit Court ("the trial court") had properly dismissed a February 2015 paternity action filed by M.J.M. to prove his paternity of K.P., a child born to R.M.B. in January 2012. M.J.M., 204 So.3d at 367-68. During her pregnancy, R.M.B. informed C.P. that he was the child's father, and he was present for the child's birth, executed an affidavit of paternity, was listed as K.P.'s father on the birth certificate, and had been rearing K.P. with R.M.B. at least since he had moved back in with R.M.B. in 2015 after a period during which he and R.M.B. had discontinued their relationship. Id. at 369. In October 2013, R.M.B. informed M.J.M. that he was the biological father of K.P. Id. at 370. M.J.M. began visiting regularly with K.P. and remained involved in K.P.'s life at the time of the hearing on the motion to dismiss. Id. C.P. acknowledged M.J.M.'s biological paternity of K.P.; however, he testified that he had been rearing K.P. and that he desired to maintain his status as the presumed father and to continue rearing K.P. Id. Although scientific evidence indicated that M.J.M. was K.P's biological father, id. at 369, we determined that M.J.M. had failed to present evidence that C.P., who was the presumed father by virtue of § 26-17-204(a)(5), had at any *663 time failed to persist in his status as K.P.'s presumed father. Id. at 370. Thus, we concluded, M.J.M.'s paternity action was precluded by application of § 26-17-607(a). Id.
The alleged biological father in the present case argues that M.J.M. is distinguishable because, he says, M.J.M. asserted no constitutional arguments, M.J.M. failed to present evidence that C.P. had not persisted in his presumption, and M.J.M. failed to argue that he could raise a competing presumption under § 26-17-204(a). We find no basis for distinguishing M.J.M. from the present case. We have determined that the alleged biological father's constitutional challenge is so poorly mounted that we need not consider it, so the lack of a constitutional challenge in M.J.M. provides no impediment to its application as controlling precedent. We have also rejected the alleged biological father's argument that the evidence presented at trial established that the presumed father failed to persist in his presumption, partly in reliance on the holding in M.J.M., which, of course, indicates that no relevant distinction exists between M.J.M. and the present case. And, finally, we note that the alleged biological father does not argue on appeal that he, too, is a presumed father under § 26-17-204(a), and we can conceive of no basis for his doing so; thus, we conclude that the failure of M.J.M. to have made such an argument cannot compel a determination that M.J.M. is factually or legally distinguishable from the present case in any significant way.
We have rejected the alleged biological father's arguments that the AUPA is unconstitutional as applied to him and his arguments that the present case is distinguishable from caselaw interpreting and applying the AUPA. The circuit court correctly interpreted the AUPA and properly applied long-standing caselaw in its judgment dismissing the alleged biological father's paternity action. We therefore affirm its judgment.
AFFIRMED.
Pittman, Moore, and Donaldson, JJ., concur.
Thompson, P.J., concurs in the result, without writing.

Although, as will be discussed infra, the alleged biological father contends that M.J.M. is distinguishable from the present case, he does not argue that it is distinguishable on this particular point.

In the circuit court, the alleged biological father initially asserted that he, too, was a presumed father under § 26-17-204(a)(5). He appears to have abandoned that claim in his pretrial brief, but, insofar as the circuit court implicitly rejected it, we note that he does not assert any such argument on appeal. Thus, we consider it to be waived. See R.B.S. v. K.M.S., 58 So.3d 795, 800 (Ala. Civ. App. 2010) (quoting Muhammad v. Ford, 986 So.2d 1158, 1165 (Ala. 2007), quoting in turn Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1124 n.8 (Ala. 2003) ) (" ' "An argument not made on appeal is abandoned or waived." ' "); see also T.C.M. v. W.L.K., 248 So.3d 1, 4 n.1 (Ala. Civ. App. 2017) (quoting Braxton v. Stewart, 539 So.2d 284, 286 (Ala. Civ. App. 1988) ) (" 'An appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless presented and argued in brief.' ").

We note that the alleged biological father describes his interest in the child as a property interest.

The United States Supreme Court has explained:
"When an unwed father demonstrates a full commitment to the responsibilities of parenthood by 'com[ing] forward to participate in the rearing of his child,' Caban [v. Mohammed, 441 U.S., [380,] 392 [ (1979) ], his interest in personal contact with his child acquires substantial protection under the due process clause. At that point it may be said that he 'act[s] as a father toward his children.' Id., at 389 n.7. But the mere existence of a biological link does not merit equivalent constitutional protection. The actions of judges neither create nor sever genetic bonds. '[T]he importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in "promot[ing] a way of life" through the instruction of children as well as from the fact of blood relationship.' Smith v. Organization of Foster Families for Equality and Reform, 431 U.S. 816, 844 (1977) (quoting Wisconsin v. Yoder, 406 U.S. 205, 231-233 (1972) ).
"The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. If he fails to do so, the Federal Constitution will not automatically compel a state to listen to his opinion of where the child's best interests lie."
Lehr v. Robertson, 463 U.S. 248, 261-62 (1983) (footnotes omitted) (emphasis added).